```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                    FORT MYERS DIVISION
```

AMBER HATCHER, by and through her
next friend, GREGORY HATCHER,

                Plaintiff,

vs.                                    Case No.   2:13-cv-138-FtM-99DNF

DESOTO COUNTY SCHOOL DISTRICT BOARD
OF EDUCATION and ADRIAN CLINE, as
Superintendent of DeSoto County
School District, SHANNON FUSCO, as
DeSoto County High School Principal,
and ERMATINE JONES, as DeSoto County
High School Dean of Students, in
their personal and official
capacities, and their successors in
office,

                Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiff's Amended Motion for a Preliminary Injunction (Doc. #7) filed on March 4, 2013. Defendants' Response (Doc. #31) was filed on March 19, 2013. Defendants filed various Affidavits (Docs. #32, 41) and plaintiff filed a verified Declaration (Doc. #36) on March 25, 2013. The Court heard oral arguments on March 29, 2013.

Plaintiff Amber Hatcher (plaintiff or Hatcher) is a student at Desoto County High School who seeks a preliminary injunction precluding the Desoto County School Board from engaging in conduct which she perceives to be a violation of her First Amendment rights. Plaintiff seeks to organize and participate in the

National Day of Silence at her high school in an effort to bring attention to the harms associated with bullying and harassment directed at lesbian, gay, bisexual and transgender students. Since 2008, bullying of any public school student in grade K through 12 has been prohibited by Florida statute. Fla. Stat. § 1006.147. Plaintiff asserts that school officials interfered with her First Amendment right to do so last year, and have asserted again this year that plaintiff will not be allowed to participate as she proposes.

## I.

To grant a preliminary injunction, the moving party must establish: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. Indigo Room, Inc. v. City of Fort Myers, ___ F.3d ___ (11th Cir. 2013); Keeton v. Anderson-Wiley, 664 F.3d 865, 868 (11th Cir. 2011). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd., 557 F.3d 1177, 1198 (11th Cir. 2009) (citations omitted). Failure to establish any of the four factors is fatal to

a request for a preliminary injunction. Id. Additionally, a preliminary injunction which merely compels a party to "obey the law" is impermissible. Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999). Thus, an injunction which has the effect of simply directing the defendants not to violate the First Amendment would be impermissible. Elend v. Basham, 471 F.3d 1199, 1210 (11th Cir. 2006). Issuance or denial of a preliminary injunction is a decision committed to the sound discretion of the district court. Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1253-54 (11th Cir. 2005).

**II.**

It is the written policy of the Desoto County School Board that high school students within the district "have the right to . . . hear, examine, and express divergent points of view, including freedom of speech, written expression and symbolic expression" and to "assemble peacefully on school grounds." (Doc. #32-2, pp. 5-6 attached "Student's Rights and Responsibilities" exhibit.) It is also the written policy of the Desoto County School Board that, in the context of distribution of literature and materials, "[s]tudents have the right to express their opinion and points of view subject to reasonable time, place and manner limitations consistent with law." (Doc. #32-2, p. 7 School Board Policy Manual, § 210.03.)

At the oral argument, the Court asked plaintiff's counsel to describe precisely what plaintiff was seeking to do in her effort to organize and participate in the National Day of Silence at her high school. Plaintiff's counsel described the following activities: (1) speak with fellow students to organize the event, scheduled for April 19, 2013; (2) participate in the April 19, 2013, National Day of Silence at school, without causing a disruption, by (a) taking a vow of silence, and not speaking for the day at school except when called upon in class, (b) otherwise communicating by means of writing on paper or a dry erase board, (c) wearing a t-shirt/placard with a relevant, non-vulgar message, (d) displaying posters, in compliance with the school's written policies, and (e) distributing cards or literature, in compliance with the school's written policies. The Court then asked defendants' attorney how much of this conduct was within the School Board's written policy and would be allowed. The answer was all of it. The Court agrees.

Plaintiff asserts, however, that while she also agrees that all the proposed conduct is within the protection of the First Amendment, the School Board's litigation position is not the position of defendants in the past, and there is no assurance that the current position will be carried out by the School Board and its representatives who control the day-to-day operation of the school. Plaintiff also asserts that the School Board has an

unwritten policy, custom or practice which is contrary to its written policy and its litigation position, and that implementation of this unwritten policy must be enjoined. Plaintiff asserts that defendants' conduct interfered with the exercise of her First Amendment rights last year, and she has been denied permission to engage in such conduct again this year (at least until defendants' lawyer said otherwise at the oral argument). Thus, plaintiff argues that a preliminary injunction is still necessary in this case.

**A. Case or Controversy**

At oral arguments counsel for defendants suggested that there was no longer a case or controversy, and therefore the Court should proceed no further. It is certainly true that Article III of the United States Constitution limits the district court's jurisdiction to cases or controversies, Clapper v. Amnesty Intern. USA, 133 S.Ct. 1138, 1146 (2013), and requires that there be a case or controversy at all stages of the litigation. Decker v. Northwest Envtl. Def. Ctr., ___ S.Ct. ___ (2013); Chafin v. Chafin, 133 S.Ct. 1017, 1023 (2013). There is no case or controversy, however, if a case becomes moot. Chafin, 133 S.Ct. at 1023. A case may become moot if the issues presented are no longer "live", Already, LLC v. Nike, Inc., 133 S.Ct. 721, 727 (2013)("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no

longer embedded in any actual controversy about the plaintiffs' particular legal rights." (citation and internal punctuation omitted)), or "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Knox v. Serv. Emps., 132 S.Ct. 2277, 2287 (2012).

The underlying case is certainly not moot because there is no longer a "live" issue. The parties contest the operative facts and do not agree on whether plaintiff's First Amendment rights were violated in the past. Further, the parties dispute the existence of an unwritten policy which violates the First Amendment, and whether plaintiff's First Amendment rights have been or will be violated in connection with the 2013 National Day of Silence. Additionally, the request for a preliminary injunction is not moot simply because the School Board's counsel has now told the Court that the proposed activities will be allowed. "We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." Already, LLC, 133 S.Ct. at 727.

> Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.

Id. (internal quotation omitted.) The Court finds that defendants have not satisfied this "formidable burden" in this case, and there is some relief a court could provide plaintiff.

**B. First Amendment in School Speech Context**

The Supreme Court has summarized its First Amendment decisions in the context of school speech as follows: "Our cases make clear that students do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. At the same time, we have held that the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings, and that the rights of students must be applied in light of the special characteristics of the school environment." Morse v. Frederick, 551 U.S. 393, 396 (2007)(internal citations and punctuation omitted). See also Keeton v. Anderson-Wiley, 664 F.3d 865, 871 (11th Cir. 2011); Boim v. Fulton Cnty. Sch. Dist., 494 F.3d 978, 982 (11th Cir. 2007). The Eleventh Circuit has stated that within nonpublic school fora "there are four clear categories of expression: vulgar expression, pure student expression, government expression, and school-sponsored expression." Bannon v. School Dist. of Palm Beach Cnty., 387 F.3d 1208, 1213 (11th Cir. 2004). Different standards apply to each category of expression.

> Vulgar expression is student expression that is lewd, offensive, or indecent, and schools may freely curtail it. Pure student expression is student expression that merely happens to occur on the school premises, and schools must tolerate such expression unless they can reasonably forecast that the expression will lead to

> substantial disruption of or material interference with school activities. Government expression is expression delivered directly through the government or indirectly through private intermediaries, and the government is free to make subject-matter-based choices. Finally, between the spectrum of pure student expression and government expression is the intermediate category of school-sponsored expression: when students, parents, and members of the public might reasonably perceive [students' expressive activities] to bear the imprimatur of the school, schools may censor student expression so long as their actions are reasonably related to legitimate pedagogical concerns.

Bannon, 387 F.3d at 1213-14 (internal citations and punctuation omitted). Even in a pure student expression case as we have here, school officials

> must have the flexibility to control the tenor and contours of student speech within school walls or on school property, even if such speech does not result in a reasonable fear of immediate disruption. Nevertheless, student speech must at least be likely to cause a material and substantial disruption, ... and more than a brief, easily overlooked, *de minimis* impact, before it may be curtailed. . . . [S]tudent expression may unquestionably be regulated when doing so contributes to the maintenance of order and decorum within the educational system.

Boim, 494 F.3d at 982-83 (citations, footnote and internal punctuation omitted).

**C. This Case**

    **(1) Success on the Merits**

The Court finds that plaintiff has established a substantial likelihood of success on the merits of her First Amendment claims as to an unwritten policy, custom or practice of the School Board

-8-

to absolutely ban all speech which the school deems to be "protest" speech.

While there are factual disputes as to what plaintiff requested last year, it is undisputed that the Desoto County High School Principal refused to allow plaintiff to engage in any of her requested activities relating to that year's National Day of Silence.  At least some of these proposed activities were well within the written policy of the School Board, and some required no approval by any school official, e.g., remaining silent outside of class, communicating in writing or by dry erase board outside of class, non-vulgar conversations about the upcoming National Day of Silence.

Plaintiff has also satisfactorily established, based upon the emails of the defendants, that there is an established unwritten policy or practice absolutely banning all "protest" speech at the Desoto County schools that is contrary to the School Board's written policy and the First Amendment. The Superintendent of the School Board instructed the Principal to inform plaintiff that "[i]t is inconsistent with the district's past practice to approve student protests on any of our campuses.  The attached [request from plaintiff] is disapproved."  (Doc. #1-5, p. 2.)  The Superintendent also told the Principal that he "did not refer to a specific policy.  Since this is classified as a protest, as evidenced by the submitted documents, I will not approve the

activity on our campuses. This *past practice* position needs to be discussed with Miss Hatcher on April 13, 2012." (Id., emphasis in original.) The Principal reported back to the Superintendent that she had "addressed the issue" with plaintiff, had told her several times she could not participate in the activities, and had told her "what the ramifications would be if the protest occurred." (Doc. #1-6, p. 2.) The Principal sent an email to all teachers on the day of the proposed activities stating that a group of students "have an intention of protesting. The district has an absolute policy against protesting on school campuses." (Doc. #1-8, p. 2.) The Principal stated that the Dean or Administration should be notified if students "are wearing placard in protest of an issue" or disrupting the hallways or classrooms, which included refusal to participate in class by taking part in a silent protest. (Id.)

It is well established that "an absolute policy against protesting on school campuses" violates the First Amendment. For ninety years the Supreme Court has recognized that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Indep. Comm. Sch. Dist., 393 U.S. 503, 506 (1969)(citing two cases decided in 1923). "In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and

unpleasantness that always accompany an unpopular viewpoint." Id. at 509. As the Eleventh Circuit has stated, Tinker stands for the proposition that a school may not prohibit expressive activity unless there are "facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1271 (11th Cir. 2004). A blanket policy against "protest" speech of any description is incompatible with longstanding First Amendment principles.

The events of April 20, 2012, are more factually contested, but the Court finds they too support a finding that plaintiff is likely to succeed on her First Amendment claims. Plaintiff wore a non-vulgar t-shirt and remained silent at school. There were no incidents until after plaintiff was removed from her third period class. Her third period teacher has filed an Affidavit stating he did not call on plaintiff during class, and reported no change or disruption in his teaching of the class. (Doc. #41, p. 3.) The teacher did not cause plaintiff to be removed from his class, and does not know why she was removed. The Dean of Students has filed an Affidavit stating that she did not cause plaintiff to be removed from class, but found plaintiff at the Dean's office. The Dean states that plaintiff then became disruptive with the Dean, for which she was disciplined. (Doc. #32-3, pp. 1-2.) No affidavit submitted by defendants explain why plaintiff was removed from her

third period class, and there is no indication of any disruption prior to plaintiff's confrontation with the Dean. The parties dispute whether the resulting discipline was related to plaintiff's National Day of Silence activities or her conduct with the Dean. At this point in the development of the record, it is a reasonable inference that plaintiff was pulled out of her third period class because of her "protest" activities.

A post-event email from the Principal suggests that plaintiff's discipline was in fact related to her "protest" activities. The email stated that "only two students received any consequences from protesting for LGBT day of silence." (Doc. #1-9, p. 3). Plaintiff was identified as being "dressed in a shirt protesting the occasion," and as one of those receiving consequences. (Id.) This email also stated that two other students were asked to remove their protest tags and answer questions, and both did so. (Id.)

**(2) Irreparable Injury Without Preliminary Injunction**

Irreparable injury "is the *sine qua non* of injunctive relief." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)(en banc)(citations omitted). The Court finds that plaintiff has not established she will suffer irreparable injury to her First Amendment rights unless a preliminary injunction is issued.

The Court does not doubt that being deprived of First Amendment rights can be an irreparable injury. "The loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1271-72 (11th Cir. 2006)(citing Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion)). The difficulty is whether a preliminary injunction is needed to prevent such future irreparable injury. The attorney for the School Board has stated that plaintiff may engage in literally all the conduct described by her attorney to the Court.  While plaintiff is skeptical, counsel for the School Board also pointed out that both the Principal and the Superintendent involved in the conduct underlying this case are no longer employed by the School Board. The Court has no basis to believe that the School Board's counsel has misled the Court in his representation, or to believe the School Board will not honor the position its authorized legal representative has articulated.

**(3)  Balance of Injuries**

The Court finds that the threatened First Amendment injury to plaintiff outweighs any damage a preliminary injunction might cause defendants.  Given the posture of the case, it is clear that plaintiff has First Amendment rights at school, and the School Board does not challenge her conduct as described to the Court.

**(4) Public Policy**

Finally, the Court finds that a preliminary injunction would not be adverse to the public interest. The free flow of constitutionally protected speech furthers the public interest.

**(5) Content of Preliminary Injunction**

One final observation is necessary. While the Court has found that a preliminary injunction is not necessary to prevent irreparable harm, the content of any such preliminary injunction in the context of this case would be problematic. Some First Amendment issues are rather easily susceptible to being remedied by a properly phrased injunction. This case is not such a situation. The proposed preliminary injunction submitted by plaintiff either simply enjoins the School Board from violating the First Amendment (i.e., enforcing policies or practices that affect a blanket ban on "protests"; enforcing policies or practices that prohibit constitutionally protected speech) or enjoins potential conduct by the School Board and other students which is well within their First Amendment rights or responsibilities (enforcing policies and practices that prohibit expression in opposition to anti-LGBT bullying). (Doc. #7-11.) The Court finds that short of saying "obey the law," there is not a preliminary injunction which has been suggested that is sufficiently unambiguous as to the conduct proscribed so as to provide meaningful guidance as to the conduct being enjoined.

The Court, in the exercise of its discretion, declines to issue the preliminary injunction requested in this case.

Accordingly, it is now

**ORDERED:**

Plaintiff's Amended Motion for a Preliminary Injunction (Doc. #7) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __5th__ day of April, 2013.

>         *[signature: John E. Steele]*
> JOHN E. STEELE
> United States District Judge

Copies:
Counsel of record